# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    vs.                           No.    CR 09-2054 MCA

**NATHAN DAVID DEBREW, SR. et., al.**,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Nathan Debrew Sr.'s *Motion in Limine Regarding Prior Conviction and Memorandum in Support Thereof* [Doc. 69], filed September 30, 2009; the government's *Motion in Limine* [Doc. 87], filed October 21, 2009; Nathan Debrew Jr.'s *Motion in Limine to Exclude Post-Arrest Statement Made by Co-Defendant* [Doc. 92], filed October 26, 2009; *Defendant Debrew Sr.'s Motion in Limine to Limit Scope of Expert Testimony* [Doc. 96], filed October 31, 2009; *Defendant Debrew Sr.'s Motion in Limine to Prohibit Introduction of Debrew Sr.'s Recorded Statement/Objection to Government Exhibit 13* [Doc. 97], filed October 31, 2009; Nathan Debrew Sr.'s *Motion in Limine to Prevent Introduction of Plea Agreement/Objection to Government Exhibit 15* [Doc. 98], filed November 1, 2009; Nathan Debrew Jr.'s *Motion in Limine to Exclude or Limit the Scope of Expert Testimony* [Doc. 103], filed November 2, 2009; *Defendant Debrew Sr.'s Motion to Sever Count 4: Felon in Possession of a Firearm* [Doc. 129], filed December 5, 2009; *Defendant Debrew Sr.'s Motion in Limine to Prevent or Limit Expert Testimony of*

*Officer James Smid* [Doc. 135], filed January 8, 2010; and Nathan Debrew Jr.'s *Motion in Limine to Exclude or Limit the Scope of Expert Testimony of Officer James Smid* [Doc. 136], filed January 11, 2010. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court rules as described more fully below.

## I. BACKGROUND

At approximately 6:00 pm on November 24, 2008, Defendants Nathan Debrew, Sr. and Nathan Debrew Jr. were, respectively, the driver and the passenger in a tractor trailer that pulled into the New Mexico Motor Transportation Division's (MTD) inspection station on Interstate 10 in Lordsburg en route from California to Virginia, in the course of an alleged military-household move. After Inspector James Tarango greeted the Debrews and advised Mr. Debrew Sr. that an inspection would be conducted on the tractor trailer, Inspector Ben Strain decided to conduct a Level II inspection. As this Court has previously determined, see Doc. 131 at 21-26, at some point during what began as his regulatory inspection, Inspector Strain developed probable cause to search the trailer. As a result of this search, Inspector Strain and MTD Officer Benjamin Chavez discovered cellophane-wrapped bundles of marijuana, as well as a 9 mm handgun and ammunition. Both Debrews were then placed under arrest for possession of marijuana, and both Debrews subsequently (and separately) made statements to New Mexico State Police Officers Corey Watkins and Phillip Candelaria, and Lieutenant Greg Kerr, supervisor for the Lordsburg Port of Entry.

## II. ANALYSIS

**A.**      **Nathan Debrew Sr.'s** *Motion in Limine Regarding Prior Conviction and Memorandum in Support Thereof* **[Doc. 69];**

**B.**      **Nathan Debrew Sr.'s** *Motion in Limine to Prevent Introduction of Plea Agreement/Objection to Government Exhibit 15* **[Doc. 98]; and**

**C.**      **Government's** *Notice of Rule 609 Evidence* **[Doc. 74]**

On August 23, 1994, Nathan Debrew Sr. executed, in the United States District Court for the Middle District of North Carolina, a plea agreement wherein he pled guilty to one count of conspiracy to distribute kilogram quantities of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and 846. [Doc. 88; Exh. A]. In its *Supplemental Notice of Intent to Offer Evidence of Other Crimes or Bad Acts Pursuant to Fed.R.Evid. 404(b)*, the government has given notice that it intends to offer evidence of the plea agreement, which originally appeared on its *Exhibit List* as exhibit number 15,[1] see Doc. 89 at 1, to show Mr. Debrew Sr.'s "motive, knowledge, intent, and plan to distribute bulk marijuana in this case, and the lack of mistake or accident that bulk marijuana was found in the tractor-trailer he was driving." [Doc. 88 at 3]. The government further has filed notice of its intent to use, pursuant to Fed.R.Evid. 609, the fact of this prior felony conviction to impeach Mr. Debrew Sr., should Mr. Debrew Sr. testify at trial. [Doc. 74].

Mr. Debrew Sr. has moved to exclude evidence of his prior conviction on grounds that (1) the government has not articulated a proper purpose for its use; (2) the probative value

---

[1] At the Call of the Calendar, the government advised the Court that Mr. Debrew Sr.'s plea agreement had inadvertently been omitted from its *Exhibit List*, but that, for trial, the agreement would be renumbered as exhibit number 29.

of the 16-year old conviction is slight; and (3) the government's true purpose in seeking its admission is to prove propensity. [See generally Doc. 69].  Repeating that the age of the conviction renders its probative value slight, and that the government's true purpose in introducing the conviction is to show a propensity to engage in criminal conduct, Mr. Debrew Sr. also objects to the government's intention to use the conviction as impeachment evidence. [See generally Doc. 86].

Under Fed.R.Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b).  Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident. See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988). This test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th

4

Cir.1999)).  Additionally, "[t]he list of proper purposes is illustrative, not exhaustive, and Rule 404(b) is considered to be 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition.'" United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001) (emphasis in original) (*quoting* United States v. Van Metre, 150 F.3d 339, 349 (4th Cir.1998)).

Applying the four Huddleston factors to the facts of this case, I note that the Tenth Circuit has held that evidence of prior drug involvement is offered for a proper Rule 404(b) purpose when it is offered "'to show plan, motive or intent in a drug trafficking offense.'" United States v. Becker, 230 F.3d 1224, 1232 (10th Cir. 2000) (*quoting* United States v. Sturmoski, 971 F.2d 452, 459 (10th Cir.1992)).  In this case, the government represents that it intends to use evidence of Mr. Debrew Sr.'s 1994 felony conviction to show, among other things, his plan, motive, and/or intent to distribute bulk marijuana in 2008, as well as to demonstrate that Mr. Debrew Sr.'s transportation of the marijuana was not by mistake or accident.  These are proper purposes for which evidence of prior bad acts may be offered. See Becker, 230 F.3d at 1232; Fed.R.Evid. 404(b).

With respect to the second Huddleston factor—relevance—the Tenth Circuit has "long recognized the admissibility of previous wrongs and crimes in the context of narcotics violations, especially when the prior activity was close in time, highly probative, and similar to the activity with which the defendant is charged."  United States v. McKinnell, 888 F.2d 669, 676 (10th Cir. 1989), abrogated by United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995).  In this case, the similarities between the conduct resulting in the North Carolina plea

agreement and Mr. Debrew Sr.'s 2008 conduct are striking.  In both cases, Mr. Debrew Sr. was driving kilogram-quantities of illegal substances from the west coast to the east coast in a moving van he either owned or was in the process of purchasing. In both cases, the drugs were contained in U-Haul boxes that were off-loaded from a smaller vehicle into Mr. Debrew Sr.'s moving van, and that, once in Mr. Debrew Sr.'s truck, were transported alongside supposed loads of household goods, see Doc. 131 at 8, or "'phantom' load[s] of furniture, see Doc. 88; Exh. 2 A at 8.  Finally, Mr. Debrew Sr. routinely made these cross-country trips with other individuals—on the earlier trips, he recruited co-drivers and on the instant trip he was traveling with his son.

Notwithstanding these similarities, 16 years separate the earlier offense from the instant offense. [See Doc. 73; Exh. 2 at 1 (Dec. 1, 1994 *Amended Judgment in a Criminal Case*, showing 12/15/92 as "date offense concluded.").  To be admissible under Rule 404(b), a prior bad act "must be reasonably close in time to the crime charged."  United States v. Cuch, 842 F.2d 1173, 1176 (10th Cir. 1988).  However, "[t]here is no absolute rule regarding the number of years that can separate offenses [and the Tenth Circuit] appl[ies] a reasonableness standard based on "the facts and circumstances of each case."  Id. at 1178.  Moreover, periods of incarceration are not counted in the calculus, because those are times during which the defendant "obviously ha[s] no opportunity to commit other distribution offenses."  United States v. Cherry, 433 F.3d 698, 702 n.4 (10th Cir. 2005).

As a consequence of the conduct resulting in the 1994 plea agreement, Mr. Debrew Sr. was sentenced to a prison term of 156 months. [See Doc. 73; Exh. 2 at 2].  He was

released from prison on August 11, 2005. [See Doc. 123 at 2]. Accordingly, for purposes of analyzing Rule 404(b) temporal proximity, just over three years separate the earlier and the instant conduct. See United States v. Robertson, 297 Fed.Appx. 722, 727 (10th Cir. 2008) (where (1) charged conduct was committed in 2007; (2) prior bad acts were committed in 1995 and later in 1998; but (3) defendant was incarcerated between 1998 and 2004, applicable time, for Rule 404(b) purposes, between 1995 conviction and 2007 conduct was 6 years, and applicable time between 1998 conviction and 2007 conduct was 3 years).

In any event, the Tenth Circuit has upheld the use of an eight-year-old drug conviction—and pointed to cases from sister circuits where even older convictions were admitted—where strength of probative value and similarity of the offenses weigh in favor of admission. See United States v. Burse, 150 Fed.Appx. 829, 831 (10th Cir. 2005); see also United States v. Gaddy, 532 F.3d 783, 789 (8th Cir. 2008) (convictions that were 4, 10, and 11 years old at time of trial were "not so remote as to be inadmissible."); United States v. Hernandez-Guevara, 162 F.3d 863, 873 (5th Cir. 1998) (no abuse of discretion to admit nearly 18-year-old conviction where "it involved exactly the same crime as was charged in the indictment."); United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (no abuse of discretion to admit 15-year-old conviction, particularly where district court conducted Rule 403 balancing test). In this case, especially given the similarities between the earlier and the instant conduct, I do not find that the prior acts that the government seeks to admit (which, for Rule 404(b) purposes, are separated from the instant conduct by only three years) are so temporally remote as to render them inadmissible. See Robertson, 297 Fed.Appx. at

727-728.

The third  Huddleston factor demands that I determine whether the probative value of the similar acts is substantially outweighed by the potential for unfair prejudice.  I conclude that this is not the case.  Aside from the substance involved, the instant charged offenses (possession with intent to distribute kilogram quantities of marijuana and conspiracy to commit the offense of possession with intent to distribute kilogram quantities of marijuana, in violation of 21 U.S.C. §§ 846; 841(a)(1), (b)(1)(B)) virtually mirror the charge to which Mr. Debrew Sr. pled guilty and for which he was convicted in 1994 (conspiracy to commit the offense of possession with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. §§ 846; 841(a)(1), (b)(1)(A)).   Additionally, the factual circumstances surrounding both instances of conduct are, as described more fully above, remarkably similar.  Under the circumstances, I conclude that the proffered evidence is highly probative of (1) Mr. Debrew Sr.'s plan; (2) Mr. Debrew's knowledge that there was a controlled substance in his trailer; and (3) the fact that the marijuana did not end up in Mr. Debrew Sr.'s vehicle by accident or mistake.  See 22 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE § 5247 (1st ed.) ("Often the absence of mistake or accident is proved on a notion of probability; *i. e.*, how likely is it that the defendant would have made the same mistake or have been involved in the same fortuitous act on more than one occasion.").   I conclude that the probative value of the proffered evidence is not substantially outweighed by its potential for unfair prejudice.

As for the final Huddleston factor—the provision of a limiting instruction— the jurors will be instructed that they are to consider the evidence of the earlier acts only for the proper purpose or purposes for which such evidence will have been admitted.  Mr. Debrew Sr. expresses concern that "the likelihood that the jury will consider [the proffered evidence] for purposes of propensity is high, notwithstanding any limiting instruction that the [C]ourt might give." [Doc. 69 at 3].  Juries, however, are presumed to follow their instructions, and that includes cautionary or limiting instructions that the Court would give.  See United States v. Arriola-Perez, 137 Fed.Appx. 119, 128 (10th Cir. 2005) (repeating that juries are presumed to follow instructions).

On the basis of the foregoing, Mr. Debrew Sr.'s *Motion in Limine Regarding Prior Conviction and Memorandum in Support Thereof* will be denied.  For the reasons stated on the record at the Call of the Calendar, I find that the proffered evidence is highly probative of (1) Mr. Debrew Sr.'s plan; (2) Mr. Debrew's knowledge that there was a controlled substance in his trailer; and (3) the fact that the marijuana did not end up in Mr. Debrew Sr.'s vehicle by accident or mistake and, therefore, is admissible for these proper Rule 404(b) purposes.

Because Mr. Debrew Sr. repeats and incorporates the arguments from his *Motion in Limine Regarding Prior Conviction and Memorandum in Support Thereof* [Doc. 69] in his *Motion in Limine to Prevent Introduction of Plea Agreement/Objection to Government Exhibit 15* [Doc. 98], the Court, for the same reasons, also denies this latter motion to the extent that the latter motion (Document 98) repeats and incorporates the arguments from the

former motion (Document 69).  The Court, however, will grant the *Motion in Limine to Prevent Introduction of Plea Agreement/Objection to Government Exhibit 15* in part, to the extent that counsel for the government is now directed to redact all but the following portions of the plea agreement:

> (1) Caption (page 1);
> (2) Introductory paragraph beginning, "NOW COME the United States of America (page 1);
> (3) Paragraph 14 (page 7);
> (4) Paragraph 15 (pages 7-9); and
> (5) the signatures of (a) Douglas Cannon, Assistant United States Attorney; (b) Arnold L. Husser, Special Assistant United States Attorney; (c) Nathan Debrew; and (d) James J. Exum, Attorney for Nathan Debrew (page 9).

Accordingly, Mr. Debrew Sr.'s *Motion in Limine to Prevent Introduction of Plea Agreement/Objection to Government Exhibit 15* is granted in part and denied in part, subject to proper redaction.

Finally, the government has provided notice that, should Mr. Debrew Sr. testify at trial, the government will seek to impeach his testimony with the fact of his prior felony conviction.   With respect to the issue of the scope of its impeachment, the government "agrees to limit its impeachment to the fact of conviction and not delve into the nature of the conviction or the amount of time [Mr. Debrew Sr.] served unless [Mr. Debrew Sr.] testifies that he has never trafficked or conspired to traffic narcotics." [Doc. 74; Doc. 123 at 3].  Mr. Debrew Sr. objects to the use of the conviction for impeachment purposes, arguing that (1) the government's real purpose in introducing the conviction is to demonstrate propensity; (2) the facts underlying the prior conviction are "significantly different" from the facts

alleged here; and (3) the age of the conviction gives it little probative value. [See generally Doc. 86].

While Rule 404(b) allows, under appropriate circumstances, the admission of evidence of "other crimes wrongs, or acts[,]" see Fed.R.Evid.404(b), Rule 609(a) provides for impeachment by evidence of a criminal conviction, see Fed.R.Evid. 609(a).[2] Rule 609(a) states, in pertinent part, that "[f]or the purpose of attacking the character for truthfulness of a witness . . . evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused. . . . " Fed.R.Evid. 609(a)(1).  In United States v. Wolf, the Tenth Circuit "continue[d] the time-honored rule that when a defendant in a criminal case takes the stand in his own defense, his credibility may be impeached and his testimony attacked in the same manner as any other witness, including reference to prior convictions." United States v. Wolf, 61 F.2d 1376, 1381 (10th Cir. 1977).  In establishing the scope of permissible cross-examination under Rule 609, the Circuit explained that

> [o]rdinarily, it is improper for the prosecution to examine into the details of the crime for which the accused was convicted. The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment. Care should be taken to protect the accused as far as possible from being convicted because of past conduct and not the crime for which he is being tried.

---

[2] In the interest of completeness, I will address the Rule 609 issue, although my determination that evidence underlying the prior felony conviction is admissible under Rule 404(b) makes a Rule 609 discussion unnecessary.

Id.[3]  That a defendant is "entitled to the protection of the rule that only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility[]" continues to "remain[] good law."  United States v. Commanche, 577 F.3d 1261, 1271 (10th Cir. 2009) (internal quotations omitted).

As already explained in the Rule 404(b) analysis, I conclude that the probative value of Mr. Debrew Sr.'s prior felony conviction outweighs its prejudicial effect.  See Fed.R.Evid. 609(a)(1).  I also determine that the conviction falls within Rule 609's 10-year time limit, which allows for the admission of evidence of a conviction "if a period of more than ten years has [not] elapsed since the date of the conviction *or of the release of the witness from the confinement imposed for that conviction, whichever is the later date. . . .*"  Fed.R.Evid. 609(b) (emphasis added); see also United States v. Jefferson, 925 F.2d 1242, 1256 (10th Cir. 1991) (noting 10-year post-"release from confinement" period, but declining to decide whether Rule 609's limitations period is tolled upon arrest or upon accused's testifying, since district court possesses discretion to admit prior convictions that fall outside 10-year period if court determines, in the interest of justice, that probative value of conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect).  Because Mr. Debrew Sr. was released from confinement on August 11, 2005, see Doc. 123 at 2, his prior conviction falls within Rule 609(b)'s 10-year time limit.  Finally, I am not persuaded by Mr.

---

[3]  Notwithstanding, the Circuit went on to note that "[a] different situation is presented when an accused, on direct examination, attempts to explain away the effect of the conviction or to minimize his guilt. In such cases the defendant may be cross-examined on any facts which are relevant to the direct examination."  Wolf, 561 F.2d at 1381.

Debrew Sr.'s argument that the government's true purpose in introducing evidence of his prior felony conviction is to establish propensity, as explained more fully in the above Rule 404(b) analysis.  To be sure, the Tenth Circuit has recently confirmed that the general nature of a prior felony conviction is "fair game" for testing a defendant's credibility.  See Commanche, 577 F.3d at 1271.  The government has already agreed "to limit its impeachment to the *fact* of conviction and not delve into the *nature* of the conviction. . . ."[4] [Doc. 123 at 3 (emphasis added)].  This the government is permitted to do.  See Commanche, 577 F.3d at 1271 ("Although he concedes that the fact of conviction was admissible for impeachment, [defendant] contends that the government should have been prohibited from delving into the details of the prior offenses. We agree.").  Mr. Debrew Sr.'s objections to the government's notice to offer evidence pursuant to Rule 609 are overruled.

This Court incorporates its findings made at the oral arguments of January 21, 2010 and January 25, 2010.

### D.    Government's *Motion in Limine* [Doc. 87]

The government has moved to exclude post-arrest statements made by co-defendant Nathan Debrew Jr. that (1) he did not know there was marijuana in the trailer; (2) Mr.

---

[4] The government's agreement is conditioned on Mr. Debrew's not testifying that he has never trafficked or conspired to traffic narcotics. [See Doc. 123 at 3].  Should Mr. Debrew so testify, the government reserves the right to question Mr. Debrew Sr. on the particulars of the conviction, and rightly so.  See United States v. Erb, 596 F.2d 412, 420 (10th Cir. 1979) (cross-examination on nature of previous similar acts permissible where defendant had "opened the door" to such questioning); see also United States v. Osazuwa, 564 F.3d 1169, 1175-76 (9th Cir. 2009) ("In a criminal prosecution, the government may introduce otherwise inadmissible evidence when the defendant 'opens the door' by introducing potentially misleading testimony[, for example,] by minimizing, or attempting to explain away, a prior conviction.").

Debrew Sr. "don't have nothing to do with this;" and (3) the gun found in the trailer belonged to Mr. Debrew Jr.   [Doc. 87 at 2]. The government posits that these statements are inadmissible hearsay that do not satisfy any of the evidentiary rules allowing for the admission of exceptions to hearsay. [Id.].   Mr. Debrew Sr. responds that the statements (1) tending to show that the gun was Mr. Debrew Jr.'s; and (2) that Mr. Debrew Sr. "don't have nothing to do with this" are admissible pursuant to Rule 804(b)(3) because they constitute statements against interest. [Doc. 99 at 1].

Rule 804(b)(3) excludes "statements against interest" from the definition of hearsay, provided that the declarant is unavailable as a witness.  Fed.R.Evid. 804(b).  A "statement against interest" is

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid 804(b)(3).  The Tenth Circuit has held that "[i]n order to admit hearsay evidence offered to exculpate the accused under [R]ule 804(b)(3), the proponent of the evidence must show: (1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to indicate the trustworthiness of the statement."  United States v. Porter, 881 F.2d 878, 882 (10th Cir. 1989).  A statement is "against penal interest" for purposes of Rule

804(b)(3) if it "so far tend[s] to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true.'" United States v. Chalan, 812 F.2d 1302, 1311 (10th Cir. 1987) (*quoting* Fed.R.Evid. 804(b)(3)).

Mr. Debrew Sr. contends—and the government does not appear to dispute—that Mr. Debrew Jr. would be unavailable for purposes of Rule 804(b)(3) if he were to invoke his Fifth Amendment right against self-incrimination and refuse to testify at trial. [See Doc. 87 at 3; Doc. 99 at 1].  The parties disagree, however, as to whether the statements in question were against Mr. Debrew Jr.'s penal interest and whether they are sufficiently trustworthy or reliable to be admissible.

Mr. Debrew Jr.'s statement that Mr. Debrew Sr. "don't have nothing to do with this" is not, under the circumstances, a statement against interest.  The reason is that where, as here, co-defendants are charged with conspiracy, a statement by co-defendant A that co-defendant B was not involved in the alleged criminal activity actually is made in co-defendant A's interest, since it tends to support the implication that co-defendant A also was not involved in the overall conspiracy.  Indeed, in such a situation, co-defendant A is motivated to lie about co-defendant B's involvement in order to protect both of them.  See United States v. Quary, 1999 WL 546999, at *4 (10th Cir. Jul. 28, 1999) (unpublished opinion) (explaining that one co-defendant's denial of second co-defendant's involvement in drug trafficking was, in fact, "not a statement against her self-interest because it tended to support her self-interest that she was not involved in any conspiracy with [second co-

defendant]. Consequently, it is reasonable to assume that [first co-defendant] had a motive to lie about [second co-defendant's] involvement in order to protect both him and herself.").

Nor is Mr. Debrew Jr.'s claim of ownership of the firearm necessarily a statement against interest under the circumstances. The reason is that Mr. Debrew Sr. has been charged with being a felon in possession of a firearm. [See Doc. 55 at 3]. "*Ownership* of the gun does not matter at all with respect to whether [Mr. Debrew Sr.] had *possession* of the gun." Burrows v. United States, 1997 WL 9772, at *1 (7th Cir. Jan. 6, 1997) (unpublished opinion) (emphasis added) (on motion to vacate sentence following conviction for being felon in possession of firearm, explaining that legal ownership of gun is of marginal relevance to issue of possession). However, notwithstanding that the statements in question cannot be said to be "squarely self-inculpatory" see Williamson v. United States, 512 U.S. 594, 603 (1994), the real impediment to their admission is that corroborating circumstances simply do not clearly demonstrate their trustworthiness. See Fed.R.Evid. 804(b)(3).

"Rule 804(b)(3) places a 'formidable burden' on those seeking to offer evidence pursuant to that rule." United States v. Blake, 571 F.3d 331, 350 (4th Cir. 2009) (*quoting* United States v. MacDonald, 688 F.2d 224, 234 (4th Cir. 1982)). It is the statement—not the declarant—that must be deemed trustworthy, with the rationale supporting the "formidable burden" being (at least in part) that admission of a statement pursuant to Rule 804(b)(3) "leaves the party against whom it is offered without the important benefit of cross examination. The level of corroboration therefore must be sufficient that cross examination would add little to test the hearsay's reliability." United States v. Bumpass, 60 F.3d 1099,

1102, (4th Cir. 1995).

Factors that may assist in determining whether sufficient corroboration exists to justify admitting a statement under Rule 804(b)(3) include: (1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement; (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie; (3) whether the declarant repeated the statement and did so consistently; (4) the party or parties to whom the statement was made; (5) the relationship of the declarant with the accused; and (6) the nature and strength of independent evidence relevant to the conduct in question.  Bumpass, 60 F.3d at 1102.

I conclude that Mr. Debrew Sr. has not satisfied his formidable burden of showing the existence of corroborating circumstances that clearly demonstrate the trustworthiness of Mr. Debrew Jr.'s statements.  Applying the Bumpass factors in no particular order, I determine that the first factor is entitled to little weight either way, since, as explained above, the statements are not in the first instance "squarely self-inculpatory."  See Williamson, 512 U.S. at 603.  The third and fourth factors would seem to weigh in Mr. Debrew Sr.'s favor, since Mr. Debrew Jr. not only made his statements to MTD police officers after having been arrested, but repeated them later that same day to an agent of the Drug Enforcement Administration (DEA).

On the other side of the scale, however, sit the second, fifth, and sixth factors.  With respect to the second and fifth factors, Mr. Debrew Jr., an individual who is not prohibited from owning a firearm, could easily have been motivated to lie by claiming ownership of the

firearm for his father, an individual with a prior felony conviction.  In asserting that Mr.

Debrew Sr. "don't have nothing to do with this," Mr. Debrew Jr. similarly could have been

motivated by a familial (and noble) desire to protect his father.  To be sure, "statements from

a declarant attempting to exculpate a defendant with whom the declarant has a close

relationship must be closely scrutinized. The father-son relationship . . . is such a

relationship."  United States v. Jones, 124 F.3d 781, 786 (6th Cir. 1997); see also United

States v. Paguio, 114 F.3d 928, 933 (9th Cir. 1997) (in Rule 804(b)(3) analysis, explaining

that "[t]here is one factor that cuts against the trustworthiness of the father's statement, and

that is that the appellant is his son."); United States v. Bobo, 994 F.2d 524, 528 (8th Cir.

1993) ("[C]ertain close relationships, such as the sibling relationship, have long been

recognized to diminish the trustworthiness of hearsay statements against the declarant's penal

interest."); United States v. Skinner, 796 F.Supp. 31, 33 (D.Colo. 1992) (son's (1) attempt

to claim ownership of drugs; and (2) assertion that his mother, the defendant, "knew nothing

about them," were not sufficiently trustworthy to be admissible under Rule 804(b)(3) because

"the statement[s] exculpate[d] the declarant's own mother. The declarant could easily have

been motivated to claim responsibility for the drugs in order to protect his mother, whether

or not the drugs in fact belonged to him.").

As for the sixth factor, I find that there exists little independent evidence to

corroborate Mr. Debrew Jr.'s statements.  When he and Mr. Debrew Sr. were stopped in

Lordsburg on November 24, 2008, Mr. Debrew Jr. was a passenger in a tractor trailer being

driven by his father, Mr. Debrew Sr.  Not only was Mr. Debrew Jr. *not* a co-driver, he did

not even possess a commercial driver's license at the time in question. [See Doc. 131 at 9].

It was Mr. Debrew Sr. who was making installment purchases to his employer to purchase

the trailer. [See id. at 15 n.2].  Mr. Debrew Sr. held the key to the trailer, where the marijuana

and gun were discovered, and it was not possible to access the trailer from the cab, where Mr.

Debrew Jr. was sitting, without passing through the locked rear.  Additionally, it was Mr.

Debrew Sr. who, among other things, exhibited the nervous and curious behavior that gave

rise to probable cause to search the trailer, as explained more fully in the *Memorandum*

*Opinion and Order* denying the Debrews' motions to suppress. [See id. at 34].  Having

applied the <u>Bumpass</u> factors, I conclude that sufficient corroboration does not exist to justify

admitting the statements in question under Rule 804(b)(3).  The government's motion to

exclude the statements at issue will be granted.[5]

## E.      Nathan Debrew Jr.'s *Motion in Limine to Exclude Post-Arrest Statement Made by Co-Defendant* [Doc. 92]

In this motion, Mr. Debrew Jr. moves to exclude from evidence any post-arrest

statements made by Mr. Debrew Sr. to law enforcement agents.  The bases for Mr. Debrew

---

[5]  The government also argues that the statements in question are inadmissible under the "residual exception" set forth in Rule 807. [Doc. 87 at 3].  Mr. Debrew Sr. has not addressed the government's Rule 807 argument. [See generally Doc. 99].  I conclude that Rule 807 does not apply here because, as explained above, Mr. Debrew Jr.'s statements do not offer guarantees of trustworthiness.  See United States v. Lawrence, 405 F.3d 888, 902 (10th Cir. 2005).

Furthermore, the use of Rule 807 is limited to those "extraordinary circumstances where the [C]ourt is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice."  United States v. Tome, 61 F.3d 1446, 1452 (10th Cir.1995)).  A more liberal use of Rule 807 "would threaten to swallow the entirety of the hearsay rule."  Id.  This case does not present extraordinary circumstances justifying invocation of Rule 807.

Jr.'s request are that Mr. Debrew Sr.'s statements (1) are testimonial and, therefore, inadmissible pursuant to Crawford v. Washington, 541 U.S. 36 (2004); and (2) do not satisfy the criteria for admission as statements of a co-conspirator. [See generally Doc. 92].  The government responds that Crawford does not apply because the government intends to introduce a redacted recording of Mr. Debrew Sr.'s statement as evidence against Mr. Debrew Sr. only; therefore, maintains the government, the statement is admissible as an admission of a party-opponent. [Doc. 126 at 2-3].  Furthermore, the government expressly states that "it does not intend to offer Debrew Sr.'s statement into evidence as a 'co-conspirator statement[]'" pursuant to Fed.R.Evid. 801(d)(2)(E). [Id. at 3 n.2].

In Crawford, the United States Supreme Court held that the Sixth Amendment instructs that testimonial statements of a witness who is absent from trial are admissible only where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine, regardless of those statements' reliability as defined by rules of evidence. Crawford, 541 U.S. at 68 (2004).

The Tenth Circuit has broken down and discussed the "multi-part inquiry" necessitated by Crawford.  United States v. Summers, 414 F.3d 1287, 1299. (10th Cir. 2005).  The first question is whether the statement in question constitutes hearsay.  Id.  at 1299.  "Under the Federal Rules of Evidence, hearsay 'is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"  Id. (quoting Fed.R.Evid. 801(c)).  The second inquiry is whether any hearsay statement was testimonial. Id.  at 1300.  Testimonial statements include statements

taken by law enforcement officials in the course of interrogations.  See Crawford, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'  Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."). To be sure, a statement "knowingly given in response to structured police questioning qualifies [as testimonial] under any conceivable definition." Id. at 53. The Tenth Circuit has affirmed that "[t]estimonial hearsay includes custodial examinations and [s]tatements taken by police officers in the course of interrogations." United States v. Solomon, 399 F.3d 1231, 1237 (10th Cir. 2005) (internal quotations omitted).

In this case, however, the government represents that it "will only introduce Debrew Sr.'s statement as evidence against Debrew Sr.—a party opponent. . . ." [Doc. 126 at 3]. Under the circumstances, maintains the government, the statement cannot be considered hearsay. [Id.].

Rule 801(d)(2) of the Federal Rules of Evidence applies to admissions of a party-opponent and provides, in pertinent part, that "*[a] statement is not hearsay* if . . . [t]he statement is offered against a party and is  . . . the party's own statement . . . ." Fed.R.Evid. 801(d)(2)(A) (emphasis added).  The justification for excluding such admissions from the definition of hearsay and allowing their introduction at trial has been explained as "a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements." United States v. DiDomenico, 78 F.3d 294, 303 (7th Cir. 1996).  Moreover, "[l]ack of opportunity to cross-examine is deprived of significance by the incongruity of the

party objecting to his own statement on the ground that he was not subject to cross-examination by himself at the time."  30B MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 7015 (1st ed.).

Persuasive authority is clear that recorded statements of a defendant/party "constitute admissions of a party-opponent, and, as such, those statements are, by definition, not hearsay under Federal Rule of Evidence 801(d)(2)(A)."  United States v. Tolliver, 454 F.3d 660, 665 (7th Cir. 2006); see also United States v. Lafferty, 387 F.Supp.2d 500, 511 n.8 (W.D.Pa. 2005) (explaining that "the four statements set forth in F.R.E. 801(d)(2)(A) through (D) would be admissible against a criminal defendant consistent with the Sixth Amendment without an opportunity for cross-examination being provided because the nature of these four statements would make them the statements of the criminal defendant.").  Accordingly, Crawford does not prevent the government's use of Mr. Debrew Sr.'s recorded post-arrest statement as evidence against Mr. Debrew Sr.

Notwithstanding that Crawford is not a bar to the use of Mr. Debrew Sr.'s post-arrest statement, other issues may arise in a joint trial where the government seeks to introduce the statement of a non-testifying co-defendant.  For example, In Bruton v. United States, the confession of a nontestifying co-defendant, which inculpated defendant George Bruton, was admitted against the co-defendant at the defendants' joint trial.  The trial court fashioned a limiting instruction whereby it instructed the jury not to consider the co-defendant's statement as evidence of Mr. Bruton's guilt.  The Supreme Court held that the Confrontation Clause was violated by the admission of "the powerfully incriminating extrajudicial

statements of a co-defendant," particularly where the co-defendant did not testify and thus was not subject to cross-examination.  Bruton v. United States, 391 U.S. 123, 135-136 (1968).

By contrast, the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when the confession has been redacted to eliminate not only the defendant's name, but any reference to the defendant's existence.  See Richardson v. Marsh, 481 U.S. 200, 211 (1987).  Bruton's protections continue to apply, however, to "statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately . . . ." Gray v. Maryland, 523 U.S. 185, 196 (1998).

Thus,

> Richardson allows a court, despite the Confrontation Clause, to admit the confession of a non-testifying co-defendant. The confession must be (i) redacted to eliminate any reference to the non-confessing defendant, and (ii) accompanied by an appropriate limiting instruction that the confession is to be considered only against the confessor. This is clearly a two-pronged requirement; a redaction, no matter how perfect, nevertheless requires an appropriate limiting instruction immediately following the admission of the confession.

Fowler v. Ward, 200 F.3d 1302, 1307 (10th Cir. 2000) (internal citation omitted), overruled on other grounds by Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir.2001).

In this case, the government asserts that "[Mr.] Debrew Sr.'s statement has been scrupulously redacted to remove any reference to [Mr.] Debrew Jr., as has the transcript of the same." [Doc. 126 at 4]  The Court, however, has not yet received a copy of the redacted

statement and thus far has only the copy that was admitted without objection as Exhibit 10 during the October 28, 2009 hearing on the Debrews' suppression motions, [see Doc. 94; attached Exhibit List (Exh. 10, "CD Recording of Debrew, Sr.'s statement"].  From this copy, Mr. Debrew Sr. can clearly be heard to make reference to his son.  For example, in response to a question as to how the marijuana came to be inside his trailer, Mr. Debrew Sr. can be heard to say, "I don't know.  Maybe my boy can tell you something." [Id.;  attached Exhibit List (Exh. 10, "CD Recording of Debrew, Sr.'s statement" at 6:40 - 6:42].  Additionally, after referring to "you guys," one of the agents can be heard asking the following question: "You had a CDL license, correct? And your son does not?".  [Id.; attached Exhibit List (Exh. 10, "CD Recording of Debrew, Sr.'s statement" at 4:42 - 4:45; 6:54 - 6:56].  In its current form, Mr. Debrew Sr.'s statement is not admissible because it has not yet been redacted to eliminate any reference to Mr. Debrew Jr.  See Richardson, 481 U.S. at 211.

At the Call of the Calendar, however, counsel for the government provided the Court with a written transcript of Mr. Debrew Sr.'s statement, complete with proposed redactions. That transcript was marked as exhibit number 13a.  The parties were allowed the opportunity to address the issue of redaction, the government proposed a number of redactions, and the Court now directs the government to redact the transcript to remove the following:

(1) Page 6, line 20 ("guys");
(2) Page 9, lines 5-6 ("Maybe my–maybe my boy can tell you something;");
(3) Page 9, line 15 ("And your son does not?");
(4) Page 9, line 16 ("No.");
(5) Page 11, lines 15-16 ("And your son is with you this whole time, driving

with you?")
(6) Page 11, line 16 ("Yes, yes, sir.");
(7) Page 12, lines 19-25;
(8) Page 13, lines 1-2;
(9) Page 15, lines 23-25;
(10) Page 16, lines 1-11;
(11) Page 16, line 12 ("No. Huh-uh.");
(12) Page 16, lines 22-23 ("did your son go anywhere from the trailer?");
(13) Page 16, line 23 ("two");
(14) Page 17, line 2 ("That's where he got down.");
(15) Page 17, lines 3-5 ("I don't know what—you know, what he did, where he was going.");
(16) Page 17, line 10 ("guys");
(17) Page 21, lines 6-10;
(18) Page 21, line 20;
(19) Page 23, lines 19-20;
(20) Page 23, lines 22-25;
(21) Page 24, lines 1-7;
(22) Page 24, lines 20-25;
(23) Page 25, lines 5-8;
(24) Page 25, line 9 ("but almost see how, okay.");
(25) Page 25, lines 20-21 ("So you're doing it for a favor for your son basically, what you're telling us.");
(26) Page 26, line 12 ("guys");
(27) Page 26, line 15 ("guys");
(28) Page 26, line 17 ("We");
(29) Page 26, lines 24-25;
(30) Page 27, lines 1-6;
(31) Page 27, line 7 ("guys");
(32) Page 27, line 13;
(33) Page 27, lines 15-18;
(34) Page 29, lines 7-8;
(35) Page 29, line 9 ("he was gonna give me some or");
(36) Page 29, lines 14-20;
(37) Page 41, lines 9-10 ("My son said no name.");
(38) Page 42, line 7 ("both"); and
(39) Page 42, lines 11-17.

Subject to these redactions, the Court will admit the post-arrest statement of Mr.

Debrew Sr.  Accordingly, Nathan Debrew Jr.'s *Motion in Limine to Exclude Post-Arrest*

25

*Statement Made by Co-Defendant* will be granted in part and denied in part.

**F.**     ***Defendant Debrew Sr.'s Motion in Limine to Prohibit Introduction of Debrew Sr.'s Recorded Statement/Objection to Government Exhibit 13* [Doc. 97]**

In this motion, Mr. Debrew Sr. moves to exclude a number of individual statements that he made during his recorded post-arrest interview with Officers Watkins and Candelaria, and Lieutenant Kerr.  He also seeks to exclude from evidence the taped recording of his statement, which has been offered by the government as Exhibit 13. [See Docs. 97, 134; Exh. 13].  For the most part, Mr. Debrew Sr. appears to argue that the statements he has isolated in his motion are inadmissible because they are substantially more prejudicial than probative, although he also contends that they are non-responsive, misleading, incomplete, and call for the jury to speculate as to what he meant. [See Doc. 97 at 2-4].

As an initial matter, I note that, since the filing of this motion, the Court has issued its *Memorandum Opinion and Order* denying the Debrews' motions to suppress evidence including, but not limited to, Mr. Debrew Sr.'s post-arrest statement.  In that *Opinion*, I expressly determined, among other things, that Mr. Debrew Sr.'s post-arrest statement was voluntarily made. [See Doc. 131 at 26-31].  I concluded that Mr. Debrew Sr. was advised of his rights under Miranda,[6] and that he both understood and waived those rights. [See id. at 30-31].

"A Miranda waiver, to be valid, must be given voluntarily, knowingly, and intelligently. An inculpatory statement, to be admissible, must be made voluntarily and of

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

the defendant's free will." <u>United States v. Minard</u>, 2006 WL 3598396, at *2 (10th Cir. Dec. 12, 2006) (unpublished opinion) (internal citations omitted).  As to both of these, the Court has already found in favor of the government.  [<u>See</u> Doc. 131 at 26-31].

Mr. Debrew Sr. now contends, however, that portions of his voluntarily and freely given statement should be excluded, primarily because the jury "might" have to guess as to what was asked and answered which, in turn, "could" lead to misconstruction by the jurors. [<u>See</u> Doc. 97 at 2 ("The jury might guess as to the question, and the answer could be unfairly construed by the jury to be an admission. . . ."); at 3 ("Sr.'s answer is not complete and the jury might guess as to the remainder of the answer. The answer is subject to being construed in a manner that is highly prejudicial to Sr."); at 3 ("From this exchange, the jury could improperly speculate. . . .")].

With respect to Mr. Debrew Sr.'s argument that one of his exchanges with Agent Watkins "is objectionable because it implies that Debrew Sr. has previously stated that his son told him about the marijuana[,]" [Doc. 97 at 2], the government responds that "[a]t trial, [it] does not intend to offer into evidence [Mr. Debrew Sr.'s] statement about his son being the one who told him about the load of marijuana." [Doc. 122 at 2 n.1].  Accordingly, Mr. Debrew Sr.'s argument as to this exchange is moot.

For reasons already set forth in his motion to exclude evidence of his prior convictions, Mr. Debrew Sr. also seeks to exclude "questions and answers [that] all involve Sr.'s prior conviction for conspiracy." [Doc. 97 at 4].  For reasons explained more fully in Section II.A. above, that motion will be denied; there is, therefore, no justification for

excluding questions and answers about the prior conviction.

As for his remaining objections, the Court has listened numerous times to Mr. Debrew Sr.'s recorded post-arrest statement and is not persuaded that the probative value of those individual exchanges that Mr. Debrew seeks to exclude is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  See Fed.R.Evid. 403; see also United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001) ("[E]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly.").  To the contrary, the exchanges that Mr. Debrew Sr. seeks to prevent the jury from considering are highly probative of what, if anything, he knew about the marijuana in his trailer and the manner in which it was placed there.  See United States v. Rodriguez, 192 F.3d 946, 949-950 (10th Cir. 1999) (explaining interplay between Rules 401 and 403, and noting "magnified" importance of indirect evidence of defendant's state of knowledge of existence of drugs in his truck where there was little direct evidence).  Mr. Debrew Sr. has given the Court no reason to prevent the introduction of the exchanges at issue.  See United States v. Gremillion, 464 F.2d 901, 908 (5th Cir. 1972) (in perjury trial, holding that it was not reversible error for court to admit entirety of recording and transcription in order to permit jury to determine meaning of defendant's statements, particularly where court might have considered arguably irrelevant portions as necessary to put defendant's statements in context).

Nor does the Rule of Completeness demand—or even support—exclusion here, contrary to Mr. Debrew Sr.'s argument.  The Rule of Completeness provides that "[w]hen

28

a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed.R.Evid. 106.  Under the Rule, "'the opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance.'" United States v. Phillips, 543 F.3d 1197, 1203 (10th Cir. 2008) (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171 (1988)).  The Rule does not prohibit admission of an incomplete document. Instead, it allows the party against whom the document is introduced to place the remainder in evidence without additional evidentiary foundation.  Phillips, 543 F.3d at 1203.  Thus, the Rule of Completeness, the goal of which is "to secure for the tribunal a complete understanding of the total tenor and effect of the utterance[,]" Phillips, 543 F.3d at 1203, supports the admission of more—not less—of Mr. Debrew Sr.'s statement.  See United States v. Castro-Cabrera, 534 F.Supp.2d 1156, 1160 (C.D.Cal. 2008) (stressing importance of allowing jury to determine statements' meaning, and promoting a case-by-case Rule of Completeness analysis "in order to avoid the injustice of having the meaning of a defendant's statement distorted by its lack of context.").  Mr. Debrew Sr.'s motion to exclude the identified portions of his post-arrest excluded statement will be denied to the extent that he seeks to exclude portions not already addressed above in Section II.E. and covered by the Court's redaction directive to the government.

29

**G.**   ***Defendant Debrew Sr.'s Motion in Limine to Limit Scope of Expert Testimony*** **[Doc. 96]; and**

**H.**   **Nathan Debrew Jr.'s** ***Motion in Limine to Exclude or Limit the Scope of Expert Testimony*** **[Doc. 103]**

On October 16, 2009, the government filed its notice of intent to offer expert testimony from DEA forensic chemist Victor Bravenec, and DEA Special Agent Darren Rhoden. [Doc. 85]. As is relevant here, the government intends to call SA Rhoden, who has been employed by the DEA since August 2001 and has had extensive training in drug and criminal interdiction, to testify that: (1) a marijuana drug-trafficking scheme involves the coordinated efforts of several different people, each of whom generally serve in separate and distinct roles; (2) marijuana transporters involved in a drug-trafficking scheme are generally paid in cash; (3) the street value of marijuana depends on, among other things, where the marijuana is purchased, and that the marijuana seized from the Debrews is valued at approximately $313,500.00 in Tucson, Arizona, and at approximately $741,000.00 in Detroit, Michigan, its intended destination; (4) typically, marijuana traffickers are paid between $50.00 and $100.00 per pound of marijuana transported; (5) marijuana transporters within a drug-trafficking scheme generally know the kind and quantity of the drug they are transporting, as well as how much they are going to be paid; (6) truck drivers are commonly recruited to transport marijuana; and (7) cell phones are a common tool of the trade in marijuana trafficking schemes. [Doc. 85 at 2-4].[7]

---

[7] On November 5, 2009, the government supplemented its notice of intent, adding that SA Rhoden also will testify as to the role that firearms play in the drug-trafficking business, specifically, that "drug trafficking is a violent enterprise and that drug traffickers routinely carry

The Debrews now separately move to limit or exclude SA Rhoden's testimony. [See Docs. 96, 103].  Mr. Debrew Sr. argues that "[t]he topics of testimony set forth in . . . the government's notice should be prohibited entirely under F.R.E. 403 [because] the notice describes an intent to present testimony concerning the structure of drug trafficking organizations, and is not properly admissible in this case. . . ." [Doc. 96 at 1, 2].  Mr. Debrew Sr. maintains that the probative value of any expert testimony concerning the structure of drug-trafficking organizations is substantially outweighed by the danger of unfair prejudice, since "[t]he only issue in this case is knowledge of the presence of marijuana in the trailer." [Id. at 2].  Finally, Mr. Debrew Sr. seeks to prevent SA Rhoden from offering testimony as to the ultimate issue, *to wit*, whether Mr. Debrew Sr. knew of the marijuana in his trailer.  [Id. at 2-3].

Mr. Debrew Jr. similarly seeks to exclude SA Rhoden's proposed testimony in its entirety.  He contends that "[k]nowledge is the only element at issue in this case[,]" but that the government would introduce SA Rhoden's testimony to imply that the Debrews participated in a large-scale drug-trafficking operation. [Doc. 103 at 2].  Mr. Debrew Jr. maintains that SA Rhoden's proposed testimony is irrelevant because no evidence links him to such an operation. [Id.].

Fed.R.Evid. 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable.  See

---

firearms to protect themselves, their merchandise, and their money." [Doc. 110 at 4-5].  Neither Mr. Debrew Sr. nor Mr. Debrew Jr. has noted an objection to the supplemental notice.

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991-92 (10th Cir. 2003). "'Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject.'" United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994).

The Tenth Circuit has "repeatedly held that in narcotics cases, expert testimony can assist the jury in understanding transactions and terminology." United States v. Quintana, 70 F.3d 1167, 1171 (10th Cir. 1995). Other circuits similarly have held that "[t]he operations of narcotics dealers are a proper subject for expert testimony under Rule 702." United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006) (*quoting* United States v. Ginsberg, 758 F.2d 823, 830 (2d Cir.1985)). Indeed, in Garcia, the Eleventh Circuit reaffirmed "the well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the

32

drug distribution business." <u>Garcia</u>, 447 F.3d at 1335.  Importantly, the <u>Garcia</u> Court affirmed the admission of expert testimony of a DEA special agent "about how drug trafficking organizations compartmentalize certain operations and roles[,]" calling the testimony "highly probative" to assist the jury to "understand how the conduct and evidence relating to the individual participants [in the charged conspiracy] might further the goals and purposes of the drug trafficking organization." <u>Id.</u>

In this case, the Debrews focus on the element of knowledge, with Mr. Debrew Sr. asserting that "[t]he *only* issue in this case is knowledge of the presence of marijuana in the trailer[,]" and Mr. Debrew Jr. maintaining that "[k]nowledge is the *only* element at issue in this case. [Doc. 96 at 2; Doc. 103 at 2 (emphasis added)].  While knowledge certainly is relevant, particularly with respect to Count 2, Possession with Intent to Distribute 100 Kilograms and More of Marijuana, the Debrews also are charged in Count 1 with Conspiracy.  The *Superseding Indictment* charges in Count 1 that the Debrews "did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons whose names are known and unknown" to possess with intent to distribute kilogram quantities of marijuana. [Doc. 56 at 1].  In order to prove the Debrews guilty of conspiracy, the government will need to prove, among other things, that the Debrews knowingly and voluntarily involved themselves in the alleged conspiracy, and that "there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged."  10TH CIR. CRIMINAL PATTERN JURY INSTRUCTION, 2.87 at 307

33

(2005 ed.); see also United States v. Slater, 971 F.2d 626, 630 (10th Cir. 1992) (detailing elements government must prove to secure conspiracy conviction).

Notwithstanding, SA Rhoden will not be permitted to use such highly charged terms as "drug trafficking organization," "drug trafficking cartel," "drug trafficking enterprise," "drug trafficking group," or "drug trafficking conspiracy."  He may, however, with proper foundation, testify as to: (1) compartmentalized roles in drug trafficking, particularly with respect to the separate tasks of packaging, transporting, and distributing marijuana; and (2) the fact that the people involved typically do not know the identities of other people involved, and the reason why this is so.  I impose these restrictions because I am concerned that any testimony from SA Rhoden as to the structure of drug trafficking organizations, particularly where the jury will also be hearing about Mr. Debrew Sr.'s prior similar bad acts, could result in substantial and unfair prejudice to the Debrews.

Similarly relevant is testimony as to the value of the drugs, as well as that those who transport drugs are typically paid in cash.  Testimony about the value of a particular amount of marijuana, whether that amount is typically held for distribution rather than personal use, and the profits customarily generated from its distribution, is relevant to the government's task of proving the Debrews' knowledge that they were transporting marijuana with the intent to distribute it.  See Rodriguez, 192 F.3d at 950. In particular, these features of the marijuana bear on the plausibility of the government's theory that the Debrews "had knowledge of the presence of the marijuana in the truck that [Mr. Debrew Sr.] was driving because no drug smuggler/dealer would place such a valuable load in the truck of an

34

unknowing driver." Id. at 949.  With the proper foundation, SA Rhoden may testify about the risks associated with entrusting a valuable and distributable quantity of marijuana to an unknowing courier.  See, e.g., United States v. Nobles, 69 F.3d 172, 183 (7th Cir. 1995) (concluding that a trial court did not err in admitting testimony that: "If a courier doesn't know what that person is carrying, he would be-maybe not as cautious or careful as to-their action, and thereby increase the risk for detention," theft, or loss en route). With proper foundation laid, SA Rhoden may offer testimony in this area.

Finally, with proper foundation, the Court also concludes that SA Rhoden may testify about whether the tools of the drug-trafficking trade include firearms and the use or possession of multiple cell phones. While it is true that a person's possession of a single cell phone is now so common as to be innocuous, see United States v. Townsend, 305 F.3d 537, 544 (6th Cir. 2002), in this case the government intends to present evidence that five cell phones were discovered as a result of the search of the tractor trailer. [See Doc. 110 at 4]. To the extent that SA Rhoden has specialized knowledge about (1) whether or why drug traffickers use or possess multiple cell phones (rather than a single cell phone) to conduct or conceal their unlawful activities; and (2) the role that firearms play in the drug-trafficking business, he may testify on these subjects. See Slater, 971 F.2d at 637; United States v. Hernandez-Dominguez, 2001 WL 13278, at *2 (10th Cir. Jan. 5, 2001) ("Pagers and cell phones . . . while not dispositive, may be indicative of illegal activity because they are known tools of the drug trade."); United States v. Hall, 473 F.3d 1295, 1304 (10th Cir. 2007) ("[F]irearms . . . are generally viewed as 'tools of the trade'—that is, means for the

distribution of illegal drugs.").

I caution the government, however, that SA Rhoden will not be allowed to testify as to his opinion that the Debrews' conduct is *consistent with* marijuana-trafficking practices. In other words, SA Rhoden may not provide expert testimony that serves as a mere pretext for "'bolster[ing] the credibility of the government's fact-witnesses by mirroring their version of events'" in a narrative statement that stresses "the similarities between the [fact] witnesses' version of events and the expert's description of typical drug transactions." United States v. Tapia-Ortiz, 23 F.3d 738, 740 (2d Cir. 1994) (*quoting* United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992)). In particular, the Court will not permit SA Rhoden's trial testimony to take the form of a lengthy narrative statement of an instance of marijuana trafficking, followed by an opinion that the Debrews' activities in this case fit the pattern or profile of such conduct. Instead, SA Rhoden must provide "brief, crisp answers to the Government's questions about several discrete topics" which are "beyond the ken of the average juror." Tapia-Ortiz, 23 F.3d at 740-741.

Additionally, because a defendant's mental state is not a proper topic for an expert's trial testimony, SA Rhoden will not be permitted to expressly state the final conclusion or inference "as to whether the [D]efendant[s] did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed.R.Evid. 704(b); United States v. Richard, 969 F.2d 849, 852 (10th Cir. 1992). Accordingly, SA Rhoden will be precluded from expressing an ultimate opinion about whether the Debrews knew of the presence of a controlled substance in the tractor trailer at issue in this case. This ruling,

36

however, "does not prevent [SA Rhoden] from testifying to facts or opinions from which *the jury* could conclude or infer the defendant[s] had the requisite mental state," Richard, 969 F.2d at 852-53 (emphasis added), so long as [SA Rhoden] does "not go outside his specialized knowledge by opining about Defendant[s'] actual intent." Muldrow, 19 F.3d at 1338.

The areas set forth above as to which SA Rhoden will be permitted to offer expert testimony all present discrete topics about which SA Rhoden can provide "brief, crisp answers to the Government's questions" in order to explain the meanings of particular items of physical evidence that are "beyond the ken of the average juror." Tapia-Ortiz, 23 F.3d at 740-41. SA Rhoden has a reliable basis for opining about these topics because his opinions follow a simple, well-established pattern of inductive reasoning from his knowledge, education, skill, experience, and training as a DEA agent working drug and criminal interdiction, and conducting and assisting in various facets of investigations of illegal drug-trafficking schemes.  These topics are also relevant to the charges in this case because they concern factors that the jury may wish to consider in deciding whether the Debrews knew that they were transporting a quantity of a controlled substance as alleged in the *Superseding Indictment*.

Subject to these parameters, the Court will deny the Debrews' motions to exclude the expert testimony of Darren Rhoden.

**I.**      ***Defendant Debrew Sr.'s Motion in Limine to Prevent or Limit Expert Testimony of Officer James Smid* [Doc. 135]; and**

**J.**      **Nathan Debrew Jr.'s *Motion in Limine to Exclude or Limit the Scope of Expert Testimony of Officer James Smid* [Doc. 136]**

On January 6, 2010, the government filed its notice of intent to offer expert testimony from MTD Officer James Smid.  It is anticipated that Officer Smid will testify as to (1) the preferred route of travel from Sacramento, California (the Debrews' point of origin) to Hampton, Virginia (the Debrews' destination); (2) the actual route of travel expected to have been taken by the Debrews (Sacramento to Tucson, Arizona to Detroit, Michigan to Hampton); and (3) the difference in mileage and costs between the two routes.  [Doc. 132; Exh. 1 at 1].  Officer Smid also is expected to testify as to the nature of a military-household move, as well as to what constitutes a trucker's legitimate "side job," and offer his expert opinion that, in this case, "[t]he 'side job' was not done professionally." [Id.; Exh. 1 at 2].  Additionally, Officer Smid intends to testify as to the purposes and uses of bills of lading in the commercial trucking industry, and provide log book interpretations. [Id.; Exh. 1 at 1, 3].

The Debrews each now move to exclude Officer Smid's proposed testimony.  Mr. Debrew Sr. contends that, rather than being scientific in nature, Officer Smid's testimony is largely "a recitation of alleged factual evidence in this case [and, therefore] not properly characterized as expert testimony." [Doc. 135 at 1-2].  He also maintains that Officer Smid "appears to be attempting to merely summarize the investigation by others[,]" and that the topics on which he proposes to testify are not topics that require specialized knowledge or training to understand. [Id. at 3, 4].  Mr. Debrew Sr. asks the Court to, among other things,

"disallow Officer Smid from merely relaying a hearsay recitation of the investigation to the jury under the guise of 'expert' testimony." [Id. at 2].

For his part, Mr. Debrew Jr. submits that Officer Smid is being offered to testify as to the Debrews' mental state and/or their credibility.  According to Mr. Debrew Jr., the government "is essentially soliciting testimony under the stamp of 'expert' that the Defendants had knowledge of the marijuana and are therefore lying when they indicated that they did not know the marijuana was in the tractor-trailer." [Doc. 136 at 4].  Mr. Debrew Jr. asks the Court to preclude Officer Smid from stating an opinion as to whether the Debrews did or did not have the requisite mental state, as such an ultimate issue is for the trier of fact alone. [Id. at 4].

As an initial matter, to the extent that Officer Smid's proposed testimony can be construed as testimony about the Debrews' mental state and/or their credibility, the Court repeats that the credibility of witnesses or a defendant's mental state is not a proper topic for an expert's trial testimony. Expert witnesses may not usurp the jury's factfinding role in determining which version of events is more credible, see United States v. Adams, 271 F.3d 1236, 1245-46 (10th Cir. 2001), nor may such witnesses usurp the Court's role in instructing the jury on the applicable law, see Specht v. Jensen, 853 F.2d 805, 807-09 (10th Cir. 1988). Thus, as with SA Rhoden, Officer Smid is not permitted to expressly state the final conclusion or inference "as to whether the [D]efendant[s] did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed.R.Evid. 704(b); Richard, 969 F.2d at 852.  Accordingly, as with SA Rhoden, Officer

Smid will be precluded from expressing an ultimate opinion about whether the Debrews knew of the presence of a controlled substance in the tractor trailer, and whether any statements or testimony attributed to the Debrews or any other witness are credible or believable, though he is not prevented from testifying to facts or opinions from which the jury could determine that the Debrews had the requisite mental state.  See Richard, 969 F.2d at 852-53.

Next, I take judicial notice that Officer Smid has been involved in numerous seizures of controlled substances and has been permitted to testify as an expert on a variety of commercial trucking practices and procedures in other cases.  See, e.g., United States v. Diaz, 2009 WL 4730422, at *8 (10th Cir. Dec. 11, 2009) (no error in allowing Officer Smid to testify as expert where his testimony might not have been entirely expert in nature, but where no objection was raised at trial); United States v. Nick, No. 08cr52 MCA, Doc. 103 (D.N.M. unpublished memorandum opinion and order filed July 9, 2008); United States v. Michael, No. CR 06-1833 MCA, Doc. 119 (D.N.M. unpublished memorandum opinion and order filed Nov. 15, 2007); United States v. Webb, No. CR 05-176 WJ (D.N.M. judgment entered May 2, 2007), United States v. Davis, No. CR 04-1211 WJ, Doc. 114 (D.N.M. Oct. 29, 2004) (unpublished memorandum opinion and order denying motion to suppress); United States v. Byrdsong, No. CR 04-1465 JCH, Doc. 21 (D.N.M. Sept. 8, 2004) (exhibits consisting of Officer Smid's certification documents tendered for suppression hearing); id., Doc. 27 (D.N.M. filed Oct. 22, 2004) (unpublished memorandum opinion and order denying motion to suppress).  Thus, I find that Officer Smid's training and experience, as a whole,

40

sufficiently qualifies him to provide relevant and reliable expert testimony as to specific practices and procedures of the commercial trucking industry, such as the purposes and uses of log books and bills of lading to document a driver's use of his time and his handling of a load, as well as the common features of a tractor trailer rig and how it is typically loaded with cargo. [See Doc. 132; Exh. 1 at 2 ("I have seen loads comparable commingled with other merchandise to fill [a] 53[-]foot trailer to make the load cost[-e]ffective.")].

I also find that Officer Smid is qualified to testify about the estimated costs of hauling a load from California to Virginia via the preferred and actual routes of travel, as set forth in the worksheet attached to the government's notice of intent.  He may testify as to such factors as distance, fuel prices, miles per gallon, and maintenance issues.  With proper foundation, Officer Smid may, on the basis of his personal inspections of military-household moves, testify as to the manner and means by which such moves are made, explaining, for example, that (1) wooden crates are used for packaging items for such moves; (2) a uniform government bill of lading accompanies the military load; and (3) a customer or service member name is included on the bill of lading.  On the basis of his personal experience as a commercial truck driver, he may (again with proper foundation) testify as to what constitutes a trucker's "side job," and the manner by which side jobs are completed.  See Fed.R.Evid. 702 advisory committee's note ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience

is reliably applied to the facts.").[8]  However, for the reasons stated more fully on the record at the Call of the Calendar, Officer Smid may not offer testimony as to, or comment on, the legitimacy or frequency of side jobs in general, nor may he offer an opinion that the alleged side job in this case "was not done professionally" or was done for "personal gain."

As was the case with SA Rhoden, the areas set forth above as to which Officer Smid will be permitted to offer expert testimony all present discrete topics about which he can provide "brief, crisp answers to the Government's questions" in order to explain the meanings of particular items of physical evidence that are "beyond the ken of the average juror." Tapia-Ortiz, 23 F.3d at 740-41. Officer Smid has a reliable basis for opining about these topics because his opinions follow a simple, well-established pattern of inductive reasoning from his many personal observations of commercial-trucking practices both as a driver and more particularly as an inspector or law enforcement officer.  These topics are also relevant to the charges in this case because they concern factors that the jury may wish to consider in deciding whether the Debrews knew that they were transporting a quantity of a controlled substance as alleged in the *Superseding Indictment*.

As with the expert testimony of SA Rhoden, as well as with any expert testimony, Officer Smid's testimony is not binding, and the jurors will be provided with a stock

---

[8]  It is debatable whether these areas fall within the confines of expert testimony under Fed. R. Civ. P. 702 insofar as Officer Smid's opinions are simply drawn from a collection of personal experiences inspecting military loads and his personal familiarity with side jobs.  See United States v. Caballero, 277 F.3d 1235, 1247 (10th Cir. 2002). To the extent that such opinions are to be considered expert testimony, they meet the standards articulated in Daubert and its progeny because they follow a simple pattern of inductive reasoning without any logical gaps or unreliable complexities.

42

instruction reminding them that they may disregard an expert opinion entirely if they should decide that it is not based upon sufficient education and experience, or if they should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence.   Subject to these parameters, the Court will deny the Debrews' motions to exclude the expert testimony of James Smid.

**K.**      ***Defendant Debrew Sr.'s Motion to Sever Count 4: Felon in Possession of a Firearm [Doc. 129]***

On September 16, 2009, the government superseded the original *Indictment* in this matter so as to add a fourth count charging Mr. Debrew Sr. with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(1)(2). [Compare Docs. 30 and 55].  Mr. Debrew Sr. now asks the Court to sever Count 4 from Counts 1, 2, and 3 on the ground that the government superseded "specifically to insure it could refer to [his] prior conviction[,]" but to allow joinder would result in unfair prejudice to him because "evidence of his prior conviction would not otherwise be admissible." [Doc. 129 at 2].

Fed.R.Crim.P. provides that

> [t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed.R.Crim.P. 8(a); see also United States v. Heckard, 238 F.3d 1222, 1231 (10th Cir. 2001) (explaining that Rule 8(a) "broadly allows joinder of offenses").  Pursuant to Fed.R.Crim.P. 14, the district court may sever counts, but the defendant must make a "strong showing of

prejudice[,]" Heckard, 238 F.3d at 1231, meaning the defendant's "right to a fair trial is threatened or actually deprived." United States v. Holland, 10 F.3d 696, 699 (10th Cir. 1993).

Mr. Debrew Sr. has not satisfied his burden of making a strong showing of prejudice here. To the contrary, I have already set forth a number of permissible purposes ( plan, motive, intent, lack of mistake or accident) for which evidence of Mr. Debrew Sr.'s prior felony conviction is admissible, and have expressly found that the probative value of this evidence is not substantially outweighed by the potential for unfair prejudice. [See Section II.A.-C., supra]. I also have determined, in the context of assessing SA Rhoden's proposed expert testimony, that firearms are "tools of the trade" in drug trafficking. [See Section II.G.-H., supra]. In United States v. Johnson, the Tenth Circuit held that the district court did not abuse its discretion in denying a motion to sever a felon-in-possession count from a distribution count, since the jury could reasonably have inferred that the charged firearm aided or assisted the defendant in the consummation of his cocaine sales. United States Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997); see also United States v. Hubbard, 61 F.3d 1261, 1270 (7th Cir. 1995) (calling firearms "recognized . . . tools of the drug trade" and noting that "natural inferences . . . may be drawn from the contemporaneous possession of guns and drugs[, since] the firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun"). Moreover, it bears repeating that, in this case, the firearm and the marijuana were discovered at the same time and in the same place. The joinder of a weapons charge with drug charges is proper when  the weapon is seized at

the same time and in the same place as the drugs.  See United States v. Cox, 934 F.2d 1114, 1119) (10th Cir. 1991) (joinder proper where weapons and marijuana seized at the same time and from the same vehicle); accord United States v. Valentine, 706 F.2d 282, 289 (10th Cir.1983)).

Even assuming that "the cumulative effect of evidence of similar misconduct might potentially prejudice" Mr. Debrew Sr., see United States v. Hollis, 971 F.2d 1441, 1457 (10th Cir. 1992), such a result does not mandate severance, id.  Finally, any prejudice that might result from a consolidated trial simply does not outweigh the expense and inconvenience that separate trials would engender.  See Johnson, 130 F.3d at 1427 (citing judicial efficiency as one factor supporting "liberal joinder").  Mr. Debrew Sr.'s motion to sever Count 4 will be denied.

As always, each of the Court's pretrial rulings set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context arises during trial.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Nathan Debrew Sr.'s *Motion in Limine Regarding Prior Conviction and Memorandum in Support Thereof* [Doc. 69] is **DENIED**;

**IT IS FURTHER ORDERED** that the government's *Motion in Limine* [Doc. 87] is **GRANTED**;

**IT IS FURTHER ORDERED** that Nathan Debrew Jr.'s *Motion in Limine to Exclude Post-Arrest Statement Made by Co-Defendant* [Doc. 92] is **GRANTED IN PART** and

45

**DENIED IN PART**, pending redaction, and as explained more fully herein;

       **IT IS FURTHER ORDERED** that *Defendant Debrew Sr.'s Motion in Limine to Limit Scope of Expert Testimony* [Doc. 96] is **DENIED**, subject to the parameters set forth above;

       **IT IS FURTHER ORDERED** that *Defendant Debrew Sr.'s Motion in Limine to Prohibit Introduction of Debrew Sr.'s Recorded Statement/Objection to Government Exhibit 13* [Doc. 97] is **DENIED**, pending redaction, and as explained more fully herein;

       **IT IS FURTHER ORDERED** that Nathan Debrew Sr.'s *Motion in Limine to Prevent Introduction of Plea Agreement/Objection to Government Exhibit 15* [Doc. 98] is **DENIED**, pending redaction, and as explained more fully herein;

       **IT IS FURTHER ORDERED** that Nathan Debrew Jr.'s *Motion in Limine to Exclude or Limit the Scope of Expert Testimony* [Doc. 103] is **DENIED**, subject to the parameters set forth above;

       **IT IS FURTHER ORDERED** that *Defendant Debrew Sr.'s Motion to Sever Count 4: Felon in Possession of a Firearm* [Doc. 129] is **DENIED**;

       **IT IS FURTHER ORDERED** that *Defendant Debrew Sr.'s Motion in Limine to Prevent or Limit Expert Testimony of Officer James Smid* [Doc. 135] is **DENIED**, subject to the parameters set forth above;

       **IT IS FURTHER ORDERED** that Nathan Debrew Jr.'s *Motion in Limine to Exclude or Limit the Scope of Expert Testimony of Officer James Smid* [Doc. 136] is **DENIED**, subject to the parameters set forth above;

**IT IS FURTHER ORDERED** that each pretrial ruling set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context arises during trial.

**SO ORDERED** this 26th day of January, 2010, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge